UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JOSE ARANA, JOSE BELLO, JOHN CEBALLOS,　:
SALVADOR COLULA, HECTOR GUIFARRO, and　:
EDIL SARMIENTO, on behalf of themselves and　:
all others similarly situated,　:
　:
       Plaintiffs,　:    **COLLECTIVE AND**
　:    **CLASS ACTION**
 -against-　:    **COMPLAINT**
　:
TITAN CONSTRUCTION SERVICES LLC d/b/a　:
TITAN CONSTRUCTION SERVICES, EL　:
CASTILLO CONTRACTING CORP., JUAN A.　:
GARCIA and AMADOR GARCIA,　:
　:
       Defendants.　:

-------------------------------------------------------------------X

  Plaintiffs Jose Arana, Jose Bello, John Ceballos, Salvador Colula, Hector Guifarro, and Edil Sarmiento (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys Pechman Law Group PLLC, complaining of defendants Titan Construction Services LLC d/b/a Titan Construction Services ("Titan"), El Castillo Contracting Corp. ("El Castillo"), Juan A. Garcia and Amador Garcia (collectively, "Defendants"), allege:

## NATURE OF THE ACTION

  1. Plaintiffs, former scaffolding and general construction workers at Titan, regularly worked over forty hours per workweek but were paid the same hourly rate for all hours worked per week, including those over forty. In addition to denying Plaintiffs overtime wages, Defendants also failed to furnish Plaintiffs with wage notices and with accurate wage statements at the end of every pay period.

  2. Plaintiffs bring this action on behalf of themselves and all similarly situated non-exempt construction workers ("Construction Workers") to recover unpaid overtime

wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), Articles 6 and 19 of the New York Labor Law ("NYLL"), and the New York Wage Theft Prevention Act ("WTPA").

## JURISDICTION

3.      This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because many of the events giving rise to Plaintiffs' claims arose at work sites of Titan and El Castillo located in this district, where Titan also maintains an office.

## THE PARTIES

**Plaintiffs**

5.      Jose Arana ("Arana") resides in the Bronx, New York.

6.      Arana worked at Titan as a scaffold and general construction worker for the first two weeks of June 2015 and worked for Titan again from the end of June 2015 through approximately December 2017.  He worked for both Titan and El Castillo from approximately January 2018 to in or about June 2018.

7.      Jose Bello ("Bello") resides in Spain.

8.      Bello worked at Titan as a scaffold and general construction worker from approximately October 2015 through approximately December 2017.  He worked for both Titan and El Castillo from approximately January 2018 to July 6, 2018.

9.      John Ceballos ("Ceballos") resides in Queens, New York.

2

10.     Ceballos worked at Titan as a scaffold and general construction worker from in or about April 2013 through approximately December 2017.  He worked for both Titan and El Castillo from approximately January 2018 to June 19, 2018.

11.     Salvador Colula ("Colula") resides in Staten Island, New York.

12.     Colula worked at Titan as a scaffold and general construction worker from in or about July 2015 through approximately December 2017.  He worked for both Titan and El Castillo from approximately January 2018 to June 30, 2018.

13.     Hector Guifarro ("Guifarro") resides in Queens, New York.

14.     Guifarro worked at Titan as a scaffold and general construction worker from May 10, 2015 to approximately December 2017.  He worked for both Titan and El Castillo from approximately January 2018 to June 8, 2018.

15.     Edil Sarmiento ("Sarmiento") resides in Queens, New York.

16.     Sarmiento worked at Titan as a scaffold and general construction worker from in or about July 2015 to approximately December 2017.  He worked for both Titan and El Castillo from approximately January 2018 to in or about June 2018.

**Corporate Defendants**

17.     Defendant Titan Construction Services LLC is a foreign limited liability company organized under New Jersey law and registered to do business in New York.

18.     Titan's principal place of business is 153 West 27th Street, Suite 403, New York, New York 10001.

19.     Titan is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

20.     Titan has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods

or materials that have been moved in or produced for interstate commerce by any person.

21.    In each of the three years preceding the filing of this Complaint, Titan's annual gross volume of sales exceeded $500,000.

22.    Defendant El Castillo Contracting Corp. is a New York corporation.

23.    El Castillo is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

24.    El Castillo has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

25.    While operating in the three years preceding the filing of this Complaint, El Castillo's annual gross volume of sales, jointly with Titan or individually, exceeded $500,000.

26.    Although El Castillo is separately incorporated, the individual Defendants, Juan A. Garcia and Amador Garcia (together, "the Garcias"), operated El Castillo as a single-integrated enterprise and/or joint employer with Titan (together, with El Castillo, the "Corporate Defendants").

27.    The Corporate Defendants' operations are integrated and unified.

28.    During Plaintiffs' employment, the Garcias were owners and managers of the Corporate Defendants.

29.    The Garcias had and exercised power over personnel decisions at the Corporate Defendants, including disciplining, hiring, and firing Titan and El Castillo employees, setting their wages, directing their day to day work duties, and otherwise controlling the terms and conditions of their employment.

4

30.     Upon information and belief, because El Castillo does not have its own commercial office, business is conducted in its name at Titan's office located at 153 West 27th Street, Suite 403, New York, New York 10001.

31.     All checks issued from El Castillo to Plaintiffs reflect the address of a residential apartment, 504 W 143rd Street, Apt. 1C, New York, New York 10031.

32.     El Castillo does not have an internet presence or public means of contact, such as a telephone number.

33.     At no point during their employment with Titan were Plaintiffs directly hired or fired by El Castillo.

34.     Upon information and belief, the Garcias paid its employees by paying subcontractor companies like El Castillo and directing those subcontractors to issue checks to individuals who are directly or jointly employed by Titan.

35.     During Plaintiffs' employment, the Garcias centrally controlled the operations of the Corporate Defendants' labor relations.

36.     During Plaintiffs' employment, the Garcias assigned and transferred Titan and El Castillo employees, including Plaintiffs, to different worksites in New York City on which Titan was the general contractor.

37.     Titan and El Castillo employees, including Plaintiffs, received their paychecks from Amador Garcia, a Titan foreman, or at Titan's Manhattan office.

38.     Rigger and other licenses issued to Plaintiffs in 2018 reflect both El Castillo and Titan as Plaintiffs' employers.

39.     Plaintiffs and other Titan and El Castillo employees wore helmets and clothing with Titan's logo at worksites.

40.     For work performed for the Corporate Defendants, Defendants paid Titan and El Castillo employees, including Plaintiffs, by checks issued by El Castillo.

5

**Individual Defendants**

41.     Juan A. Garcia ("Juan") is an owner of, and Chief Operations Officer at, Titan.

42.     Amador Garcia ("Amador") is a construction foreman at Titan.

43.     The Garcias hired Plaintiffs.

44.     Amador frequently distributed wages to Titan and El Castillo employees, including Plaintiffs, every other week.

45.     The Garcias determined the wage rates of Titan and El Castillo employees, including Plaintiffs' wage rates.

46.     The Garcias supervised Titan and El Castillo construction sites and directed Titan and El Castillo employees, including Plaintiffs.

47.     The Garcias exercised sufficient control over the operations of Titan and El Castillo to be considered Plaintiffs' employers under the FLSA and NYLL.

## FACTUAL ALLEGATIONS

48.     First formed in 2010, Titan provides waterproofing and restoration services for residences and commercial buildings.

49.     Although Plaintiffs' schedules and breaks were determined by the construction site to which they were assigned, they regularly worked over forty hours per workweek.

50.     Defendants often provided Plaintiffs' pay and the pay of other Titan employees on checks issued under the name of other subcontractor companies, such as Castillo Contracting Corp., Miranda Contracting Corp., or Mucu Contracting Corp., though neither Plaintiffs nor other Titan employees were ever hired directly by any of those subcontractor companies.

**Jose Arana's Hours and Pay**

51.     In the first two weeks of June 2015, Arana worked Monday through Friday, 8:00 a.m. to 5:00 p.m., totaling approximately 45 hours per workweek.

52.     From approximately late June 2015 to the end of 2016, Arana worked Monday through Friday, from approximately 7:00 a.m. to 5:00 p.m., and Saturday, from approximately 8:00 a.m. to 4:30 p.m., except for occasional days when he worked until 6:00 p.m., totaling approximately 58.5 to 63.5 hours per week.

53.     Throughout 2016, Arana worked approximately two Sundays from approximately 8:00 a.m. to 4:30 p.m.

54.     From approximately January 2017 to April 2017, Arana worked Monday through Friday, from approximately 7:00 a.m. to 6:00 p.m., and two to three Sundays per month, from approximately 8:00 a.m. to 4:00 p.m., totaling approximately 55 to 63 hours per week.

55.     From approximately May 2017 through approximately August 2017, Arana worked Monday through Friday, from approximately 2:00 p.m. to 12:00 a.m., and Saturday from approximately 8:00 a.m. to 4:30 p.m., totaling approximately 58.5 hours per workweek. One week during this period, however, Arana was required to work Monday through Friday from approximately 8:00 a.m. to 12:00 a.m., totaling approximately 80 hours per week.

56.     From approximately September 2017 to the end of his employment in June 2018, Arana worked Monday through Friday, from approximately 7:00 a.m. to between 5:00 and 6:00 p.m., totaling approximately 50 to 55 hours per week.

57.     Defendants paid Arana and the other plaintiffs their wages, which were typically rounded to the nearest dollar, every fourteen days.

58.     In the first two weeks of June 2015, Arana was paid a fixed daily rate of $170.

59.     From approximately late June 2015 to approximately August 2017, Defendants paid Arana $21.25 per hour worked per week, including those over forty.

60.     From approximately September 2017 to the end of his employment in June 2018, Defendants paid Arana $22.50 per hour worked per week, including those over forty.

**Jose Bello's Hours and Pay**

61.     Throughout his employment with Defendants, Bello worked a regular schedule of Monday through Friday, from approximately 8:00 a.m. to 4:30 p.m., and occasionally on Saturdays from approximately 8:00 a.m. to 4:30 p.m., totaling approximately 42.5 to 51 hours per week.

62.     Beginning in 2016, Bello occasionally started his shift earlier at 7:00 a.m., or worked until 7:30 p.m., or worked an additional Sunday from approximately 8:00 a.m. to 4:30 p.m.

63.     From the start of his employment to approximately May 2018, Defendants paid Bello $22.50 per hour worked per week, including those over forty.

64.     From approximately May 2018 to the end of his employment in July 2018, Defendants paid Bello $24.00 per hour worked per week, including those over forty.

**John Ceballos's Hours and Pay**

65.     From approximately April 2013 through November 2013, Ceballos worked Monday to Friday from approximately 8:00 a.m. to 4:30 p.m., except about three days per week where he was required to work until 6:30 p.m., totaling approximately 48.5 hours per workweek. Additionally, about twice per month, Ceballos was required to work on

Saturdays from approximately 8:00 a.m. to 4:30 p.m. On such weeks Ceballos worked 57 hours.

66.     From approximately December 2013 through April 2014, Ceballos worked Monday to Friday, from approximately 8:00 a.m. to 5:30 p.m., and about twice per month on Saturdays from approximately 8:00 a.m. to 4:30 p.m., totaling approximately 47.5 to 56 hours per workweek.

67.     From approximately May 2014 through December 2014, Ceballos worked Monday to Friday, from approximately 8:00 a.m. to 4:30 p.m., and about twice per month on Saturdays from approximately 8:00 a.m. to 4:30 p.m., totaling approximately 42.5 to 51 hours per workweek.

68.     From approximately January 2015 through October 2015, Ceballos worked Monday to Friday, from approximately 8:00 a.m. to 6:00 p.m., and Saturday from approximately 8:00 a.m. to 4:30 p.m., totaling approximately 58.5 hours per workweek.

69.     From approximately November 2015 through February 2017, Ceballos worked Monday to Friday, from approximately 8:00 a.m. to 6:00 p.m., and about twice per month on Saturdays from approximately 8:00 a.m. to 4:30 p.m., totaling approximately 50 to 58.5 hours per workweek.

70.     From approximately March 2017 through April 2017, Ceballos worked Monday to Friday, from approximately 8:00 a.m. to 6:30 p.m., totaling approximately 52.5 hours per workweek.

71.     In May 2017, Ceballos worked Monday to Friday, from approximately 7:00 a.m. to 4:30 p.m., and about twice per month on Saturdays from approximately 8:00 a.m. to 4:30 p.m., totaling approximately 47.5 to 56 hours per workweek.

72.     From approximately June 2017 through the end of his employment in June 2018, Ceballos worked Monday to Friday, from approximately 7:00 a.m. to 7:00 p.m., and

occasionally on Saturday from approximately 8:00 a.m. to 4:30 p.m., totaling approximately 60 to 68.5 hours per workweek.

73.     From the start of his employment to approximately December 2013, Defendants paid Ceballos $17.50 per hour worked per week, including those over forty.

74.     From approximately January 2014 to the end of his employment in June 2018, Defendants paid Ceballos $20.00 per hour worked per week, including those over forty.

**Salvador Colula's Hours and Pay**

75.     From the start of his employment in July 2015 through approximately July 2016, Colula worked Monday through Saturday, from approximately 8:00 a.m. to 4:00 p.m., except about three times per week when he worked until approximately 6:00 p.m., totaling approximately 54 hours per week.

76.     From approximately August 2016 through April 2017, Colula worked Monday through Saturday, from approximately 7:00 a.m. to 4:00 p.m., totaling approximately 54 hours per week.

77.     From approximately May 2017 through August 2017, Colula worked Monday through Friday, from approximately 2:00 p.m. to 12:00 a.m., and Saturday from approximately 8:00 a.m. to 4:30 p.m., totaling approximately 58.5 hours per workweek. In one week during this period, however, Colula was required to work Monday through Friday from approximately 8:00 a.m. to 12:00 a.m., totaling approximately 80 hours per week.

78.     From approximately September 2017 to the end of his employment on June 30, 2018, Colula worked Monday through Saturday, from approximately 7:00 a.m. to 6:00 p.m., totaling approximately 66 hours per week.

79.     Throughout his employment, Colula also worked eight to nine hours on Sundays approximately two times.

80.     From the start of his employment to in or about August 2016, Defendants paid Colula $18.00 per hour worked per week, including those over forty.

81.     From approximately November 2016 to July 2017, Defendants paid Colula $20.00 per hour worked per week, including those over forty.

82.     From August 2017, when Colula obtained a scaffolding license, through the end of his employment, Defendants paid Colula $22.50 per hour worked per week, including those over forty.

**Hector Guifarro**

83.     From the start of his employment in May 10, 2015 through approximately July 2015, Guifarro worked Monday through Friday, from approximately 8:00 a.m. to 4:30 p.m., totaling approximately 42.5 hours per week.

84.     From approximately August 2015 through approximately September 2015, Guifarro worked Monday through Friday, from approximately 8:00 a.m. to 6:00 p.m., totaling approximately 50 hours per week.

85.     From approximately October 3, 2015 through approximately October 2016, Guifarro worked Monday through Friday, from approximately 7:00 a.m. to 5:00 p.m., and on Saturday from approximately 8:00 a.m. to 4:30 p.m., totaling approximately 58.5 hours per week. During this period, however, Guifarro worked one Sunday from approximately 8:00 a.m. to 4:30 p.m., thus totaling 67 hours worked that week.

86.     From approximately November 2016 to June 8, 2018, Guifarro rotated between construction sites located at 111-114 Broadway and Hudson View Gardens in Manhattan.

87.     At Hudson View Gardens, Guifarro worked Monday through Friday, from approximately 8:00 a.m. to 4:30 p.m. or 6:30 p.m., and Saturday from approximately 9:00 a.m. to 5:30 p.m., totaling 51 to 61 hours per week.

88.     At 111-114 Broadway, Guifarro worked Monday through Friday, from approximately 7:00 a.m. to 5:30 p.m., and on Saturday from approximately 8:00 a.m. to 4:30 p.m., totaling 61 hours per week.  For approximately 3 months, however, Guifarro was required to work at night, Monday through Friday from approximately 2:00 p.m. to 12:00 a.m., and on Saturday from approximately 8:00 a.m. to 4:30 p.m., totaling 58.5 hours per week.

89.     From the start of his employment to approximately October 2016, Defendants paid Guifarro $16.87 per hour worked per week, including those over forty.

90.     From approximately November 2016 to the end of his employment in June 2018, Defendants paid Guifarro $18.75 per hour worked per week, including those over forty.

**Edil Sarmiento**

91.     From the start of his employment in July 2015 through approximately January 2016, Sarmiento worked Monday through Saturday, from approximately 8:00 a.m. to 4:00 p.m., except about three times per week when he worked to approximately 6:00 p.m., totaling approximately 48 to 54 hours per week.

92.     From approximately February 2016 through April 2016, Sarmiento worked Monday through Saturday, from approximately 7:00 a.m. to between 4:00 p.m. and 6:00 p.m., totaling approximately 54 to 66 hours per week. On two Sundays during this period, Sarmiento worked an additional nine to eleven hours, from approximately 7:00 a.m. to between 4:00 p.m. and 6:00 p.m.

93.     From approximately May 2016 through January 2017, Sarmiento worked Monday through Saturday, from approximately 8:00 a.m. to between 4:00 p.m. and 6:00 p.m., totaling approximately 48 to 60 hours per week.

94.     From approximately February 2017 to the end of his employment in June 2018, Sarmiento worked Monday through Friday, from approximately 7:00 a.m. to between 4:00 p.m. and 6:00 p.m., totaling approximately 54 to 66 hours per week. Twice per month during this period, Sarmiento was required to work an additional eight hours on Saturdays, from approximately 8:00 a.m. to 4:00 p.m.

95.     Throughout his employment, Sarmiento also worked eight to nine hours on Sundays approximately two times.

96.     From the start of his employment to approximately November 2016, Defendants paid Sarmiento $20.00 per hour worked per week, including those over forty.

97.     From approximately December 2016 to the end of his employment in June 2018, Defendants paid Sarmiento $21.25 per hour worked per week, including those over forty.

98.     Defendants failed to furnish Plaintiffs with a wage notice at any time throughout their employment.

99.     Defendants failed to furnish Plaintiffs with wage statements at the end of each pay period throughout their employment.

## COLLECTIVE ACTION ALLEGATIONS

100.     Plaintiffs bring this action on behalf of themselves and all similarly situated persons who have worked as Construction Workers (*i.e.*, non-exempt construction workers) at Titan and/or El Castillo (*i.e.* the "Contractor Companies") within the three years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective").

101.    The FLSA Collective consists of approximately sixty Construction Workers who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages and other monies by paying them on a straight-time basis.

102.    Throughout Plaintiffs' employment, Plaintiffs and the FLSA Collective have had work schedules consisting of over forty hours per workweek, have performed virtually the same construction duties, and have been subjected to Defendants' common pay policies depriving them of overtime wages at the rate of one and one-half times their regular hourly wage rates for all hours worked in excess of forty per workweek.

103.    Defendants are aware or should have been aware that the FLSA required them to pay Construction Workers an overtime premium for hours worked in excess of forty per workweek.

104.    Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiffs and the FLSA Collective.

105.    The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. All similarly situated Construction Workers can be readily identified and located through Defendants' records. The similarly situated Construction Workers should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

106.    The claims in this Complaint arising out of the NYLL are brought by Plaintiffs under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all similarly situated non-exempt employees ("Construction Workers), who work or have worked at Titan and/or El Castillo since at least December 2012 (the "Rule 23 Class").

107.    The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

108.    The size of the Rule 23 Class is at least eighty individuals, although the precise number of such employees is unknown. Facts supporting the calculation of that number are presently within the sole control of Defendants.

109.    Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

110.    Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually including, *inter alia*, the following:

   a. whether Defendants violated NYLL Article 6, § 190, *et seq.*, and Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142, as alleged herein;

   b. whether Defendants failed to pay non-exempt employees at the overtime rate for all time worked in excess of forty hours per week;

   c. whether Defendants failed to provide non-exempt employees with accurate wage statements as required by the NYLL and WTPA;

   d. whether Defendants failed to furnish the New York Rule 23 Class with wage notices; and

   e. the nature and the extent of the class-wide injury and the measure of damages for those injuries.

111.    Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent. Plaintiffs and the members of the Rule 23 Class work or have worked for Defendants at various times within the applicable six-year statutory period. They enjoy the same statutory rights under the NYLL to be paid at the overtime rate for all hours worked over forty in a workweek. Plaintiffs and the members of the Rule 23 Class have

sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

112.    Plaintiffs and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

113.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

114.    Plaintiffs have retained legal counsel competent and experienced in wage and hour litigation and class action litigation.

115.    There is no conflict between Plaintiffs and the Rule 23 Class members.

116.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures. Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

117.    This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

118.   Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

119.   Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages at the rate of one and one-half their regular hourly wage rates for all of the hours that they worked in excess of forty per workweek.

120.   Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a), and employed Plaintiffs and the FLSA Collective.

121.   Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' and the FLSA Collective's compensation.

122.   Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

123.   Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SECOND CLAIM
### (New York Labor Law – Unpaid Overtime)

124.   Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

125.   Pursuant to the NYLL and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiffs and the Rule 23 Class one and

one-half (1½) times their regular hourly rates of pay for all hours worked in excess of forty per workweek.

126.    Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor Regulations, and employed Plaintiffs and the Rule 23 Class.

127.    Defendants failed to pay Plaintiffs and the Rule 23 Class overtime wages equal to one and one-half (1½) times their regular hourly rates of pay per hour worked in excess of forty per workweek.

128.    Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class overtime wages.

129.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

**THIRD CLAIM**
**(New York Labor Law – Failure to Provide Wage Notices)**

130.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

131.    The NYLL and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

132.    Defendants failed to furnish to Plaintiffs and the Rule 23 Class at the time of hiring, and whenever there was a change to Plaintiffs' and the Rule 23 Class's rates of pay, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the

regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

133.     Due to Defendants' violation of NYLL § 195(1), Plaintiffs and the Rule 23 Class are entitled to recover from Defendants liquidated damages of $50.00 per day that the violation occurred, up to a maximum of $5,000.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

**FOURTH CLAIM**
**(New York Labor Law – Failure to Provide Accurate Wage Statements)**

134.     Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

135.     Defendants failed to furnish Plaintiffs and the Rule 23 Class, with each wage payment, with a statement accurately listing: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

136.     Due to Defendants' violation of the NYLL, § 195(3), Plaintiffs and the Rule 23 Class are entitled to recover from the Defendants liquidated damages of $250.00 per workday, up to a maximum of $5,000.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Rule 23 Class, respectfully request that this Court:

a.      certify this case as a class action pursuant to Rule 23 for the class of employees described herein, certification of Plaintiffs as the class representatives, and designation of Plaintiffs' counsel as Class Counsel;

b.      designate this action as a collective action on behalf of the FLSA Collective and authorize the prompt issuance a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

c.      declare that Defendants have violated the overtime wage provisions of the FLSA and the NYLL;

d.      declare that Defendants violated the notice and record keeping provisions of the NYLL and WTPA;

e.      declare that Defendants' violations of the FLSA and NYLL were willful;

f.      award Plaintiffs, the FLSA Collective, and the Rule 23 Class unpaid overtime wages;

g.      award Plaintiffs and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish a notice at the time of hiring or whenever there was a change in their rates of pay, in violation of the NYLL and WTPA;

h.      award Plaintiffs and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish to furnish accurate wage statements at the end of each pay period, in violation of the NYLL and WTPA;

        i.       award Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and the NYLL;

        j.       award Plaintiffs and the Rule 23 Class pre- and post-judgment interest under the NYLL;

        k.       award Plaintiffs, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs of the action pursuant to the FLSA and the NYLL; and

        l.       award such other and further relief as the Court deems just and proper.

Dated:    New York, New York
           March 7, 2019

                                PECHMAN LAW GROUP PLLC

                                By:

                                Louis Pechman
                                Lillian M. Marquez
                                Jaime Sanchez
                                Pechman Law Group PLLC
                                488 Madison Avenue, 17th Floor
                                New York, New York 10022
                                Tel.: (212) 583-9500
                                pechman@pechmanlaw.com
                                marquez@pechmanlaw.com
                                sanchez@pechmanlaw.com
                                *Attorneys for Plaintiffs and the Putative FLSA Collective and Class Action*